**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LANCELOT KOLLMAN,

       Plaintiff,

                              Case No. 8:14-cv-1123-T-27TGW

v.

THOMAS J. VILSACK, Secretary of the
United States Department of Agriculture, et al.

       Defendants.
_____/

**MOTION TO DISMISS BY DEFENDANTS THOMAS J. VILSACK AND DR. CHESTER A. GIPSON AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW Secretary of the United States Department of Agriculture ("USDA") Thomas J. Vilsack and Deputy Administrator of Animal and Plant Health Inspection Services ("APHIS") of the USDA Dr. Chester A. Gipson (collectively, the "Defendants"), by and through the undersigned Assistant United States Attorney, hereby respectfully move this Court, pursuant to 12(b)(6) to dismiss the Complaint with prejudice. In support thereof, the Defendants show as follows:

**INTRODUCTION**

The Animal Welfare Act ("AWA") and the accompanying regulations exist to protect animals by setting rules for the handling and care of those animals. In order to fulfill these goals, the USDA has also enacted regulations applicable to those whose licenses have been revoked, including (1) 9 C.F.R. § 2.10(b), which prohibits someone whose license has been

revoked from being licensed again; and (2) 9 C.F.R. § 2.10(c), which prohibits someone who has had a license revoked from buying, selling, transporting, exhibiting or delivering for transportation any such animal. In 2009, following notice and opportunity for a hearing, the USDA revoked the Plaintiff's animal exhibitor license based on findings that he caused injuries to two lions in violation of regulations on veterinary care for animals, knowingly operated as a dealer without a license, and lied to investigators about his actions. Plaintiff brings this lawsuit challenging the regulatory consequences of the revocation of his license.

First, Mr. Kollman attacks 9 C.F.R. § 2.10(b) by alleging that preventing a revoked licensee from obtaining a future license is outside the scope of the statute. This is incorrect. The statute does not provide guidance as to the exact consequences of the revocation of a license, thus committing that issue to the agency's discretion. Since the agency's regulation reasonably fills in a gap in the statute in light of the statute's purpose, under <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984) and its progeny, the Court may not disturb the regulation. Accordingly, Count I must be dismissed.

Second, Mr. Kollman challenges the agency's position that the bar in 9 C.F.R. § 2.10(c) against "exhibiting" animals prohibits him from presenting animals as part of a tiger act. To prevail in his request for declaratory relief, the Plaintiff must show that – despite the substantial deference owed to an agency's interpretation of its own regulation – the agency's interpretation is plainly erroneous or inconsistent with the regulation. Here, the agency's interpretation of 9 C.F.R. § 2.10(c) is consistent with the regulatory purpose of protecting animals used in exhibition, consistent with the plain language of the regulation itself, and consistent with the language of the regulatory scheme. As a result, the Court

should dismiss Plaintiff's Count II seeking declaratory relief regarding the agency's interpretation of the regulation.

## STATEMENT OF FACTS

The Regulatory Scheme

The Animal Welfare Act seeks to provide for the humane care and treatment of animals, including for those animals in exhibition. See 7 U.S.C. § 2131. The Secretary of the Department of Agriculture is "authorized to promulgate such rules, regulations, and orders as he may deem necessary in order to effectuate the purposes of [the] Act." Id. at § 2151.

A license is required to operate as a dealer or exhibitor with respect to animals. 7 U.S.C. § 2134. The terms "dealer," "exhibitor," and "animal" are all defined in the AWA and in the regulations. 7 U.S.C. §§ 2132(f)(dealer), 2132(g)(animal), 2132(h)(exhibitor); 9 C.F.R. § 1.1. In particular, exhibitor is defined in relevant part as "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, to the public for compensation, as determined by the Secretary, and such term includes carnivals, circuses, and zoos exhibiting such animals whether operated for profit or not…" 7 U.S.C. § 2132(h). The term "exhibit" is not defined in the AWA or its regulations.

The Secretary has the power to issue licenses "in such form and manner as he may prescribe." 7 U.S.C. § 2133. The regulations provide that a license shall be valid and effective unless it has been revoked or suspended, is voluntarily terminated by the licensee,

3

has expired or been terminated by the Secretary, or the annual fee has not been paid. 9 C.F.R. § 2.5(a).

The Secretary is authorized to assess civil penalties and to suspend and revoke licenses for violations of the AWA and the regulations. 7 U.S.C. § 2149. The Secretary has three enforcement options with respect to licenses: One, the Secretary may suspend a license temporarily for up to 21 days if there is "reason to believe that . . . [the licensee] has violated or is violating any provision" of the AWA or its regulations or standards. Id. at § 2149(a). Two and three, after notice and opportunity for hearing, the Secretary "may suspend for such additional period as he may specify, or revoke such license, if such violation is determined to have occurred." Id. An order of the Secretary revoking an AWA license has a three-fold effect. It invalidates the existing license, precludes issuance of a new license to the former licensee or a surrogate, and bars the former licensee from buying, selling, exhibiting and transporting any "animal" (as that term is defined in the Act and the regulations), even as an employee of another licensee. 9 C.F.R. § 2.5(a)(1); § 2.10(b); § 2.10(c); § 2.11(a)(3).

The Secretary has also issued regulations to prevent the circumvention of suspension and revocation orders by a revoked licensee or his agents and affiliates. 9 C.F.R. § 2.11(d) ("No license will be issued under circumstances that the Administrator determines would circumvent any order suspending, revoking, terminating, or denying a license under the Act"). See also id. at § 2.10(b) ("any person whose license has been revoked shall not be licensed in his or her name or in any other manner; nor will any partnership, firm, corporation, or other legal entity in which such person has a substantial interest, financial or otherwise, be licensed"); § 2.11(a)(3) (the regulations require the Secretary to deny an initial

4

license application if the applicant "has had a license revoked....") To that end, a person whose license has been revoked is barred from buying, selling, exhibiting, and transporting animals. Id. at § 2.10(c) ("Any person whose license has been…revoked shall not buy, sell, transport, exhibit, or deliver for transportation, any animal…"). Such a person is not prohibited from "handling" animals, which is defined as "petting, feeding, watering, cleaning, manipulating, loading, crating, shifting, transferring, immobilizing, restraining, treating, training, working and moving, or any similar activity with respect to any animal." 9 C.F.R. § 1.1.

The Revocation of Plaintiff's License

Plaintiff is an animal trainer who works with large circus animals, and his only professional experience is training, presenting, and handling exotic animals. Complaint, ¶ 9. Plaintiff formerly held an exhibitor's license. Id. at ¶ 10. On April 26, 2005, APHIS filed a complaint alleging that the Plaintiff willfully violated the AWA, as well as the relevant regulations and standards. Ramos v. U.S. Dep't of Agric., 322 Fed. Appx. 814, 816 (11th Cir. 2009). Specifically, the administrative complaint alleged that the Plaintiff "caused injuries to two lions that resulted in the death of one of them," "knowingly operated as a dealer without a valid license," and "lied to investigators about his actions." Id. In addition, the Plaintiff allegedly failed to obey a prior cease and desist order. Id. The Plaintiff defaulted, and his license was revoked. Complaint, ¶ 15.[1]

---

[1] The Eleventh Circuit rejected Plaintiff's arguments that the procedural default was fundamentally unfair; the court also noted that the Plaintiff did not "establish good cause for the insufficiency of his response to the Complaint." Ramos, 322 Fed. Appx. at 823-24.

5

<u>The Plaintiff Attempts to Circumvent the Revocation Order</u>

Following the revocation of his license, Plaintiff trained, handled, and presented a tiger act as an employee of another licensee, Hawthorn Corporation ("Hawthorn"), during the 2012 season. Complaint, ¶¶ 21-22. For the 2013 season, Hawthorn contracted with a circus for the Plaintiff to present the tiger act. <u>Id.</u> at ¶ 24. The circus, aware of the revocation of Plaintiff's license, asked APHIS whether Plaintiff was permitted to engage in these activities. <u>Id.</u> Citing 9 C.F.R. § 2.10(c), which prohibits any person whose license has been revoked from transporting or exhibiting any animal during the period in which the license is revoked, APHIS advised that any "licensee who employs Mr. Kollman to engage in regulated activities under the AWA, going forward, risks being subject to an administrative action to terminate his or her license." <u>Id.</u>; Complaint, Ex. 8.

Plaintiff recently applied for a new license, and APHIS denied Plaintiff's application because his previous license was revoked. <u>Id.</u> at ¶¶ 31-32. A United States Department of Agriculture administrative law judge reviewed the decision and granted summary judgment to the agency. <u>Id.</u> at ¶ 32.

## ARGUMENT

### I. **PROHIBITING A FORMER LICENSEE FROM OBTAINING A NEW LICENSE IS A REASONABLE INTERPRETATION OF AN AMBIGUITY IN THE ANIMAL WELFARE ACT AND THUS COUNT I MUST BE DISMISSED**

The Plaintiff challenges the authority of the agency to promulgate 9 C.F.R. 2.10(b), which prohibits a person whose license has been revoked from obtaining a license in the future. However, as the authorizing statute (the AWA) does not set forth the consequences

of the revocation of a license, under Chevron, the Court must defer to the agency filling in a gap in the statute.

In Chevron, the Supreme Court "held that ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion." Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs., 545 U.S. 967, 980 (2005). In other words, "Chevron's premise is that it is for agencies, not courts, to fill statutory gaps." Id. at 982. Thus, "Chevron established a familiar two-step procedure for evaluating whether an agency's interpretation of a statute is lawful. At the first step, we ask whether the statute's plain terms 'directly addres[s] the precise question at issue.' If the statute is ambiguous on the point, we defer at step two to the agency's interpretation so long as the construction is 'a reasonable policy choice for the agency to make.'" Id. at 986 (quoting Chevron, 467 U.S. at 843, 845). As a result, "[b]efore a judicial construction of a statute…may trump an agency's, the court must hold that the statute unambiguously requires the court's construction." Id. at 985. Therefore, to grant the relief requested in Count I, the Court must rule either (1) that the statute unambiguously prohibits the agency from revoking an exhibitor's license without an opportunity for reinstatement or (2) that the regulation is an unreasonable policy choice.

> **A.   The Statute Does Not Address Whether Revocation of an Exhibitor's License Prohibits Obtaining a License in the Future**

The first step of the Chevron analysis here reveals that Congress did not directly address the question at issue. At this stage of the analysis, the Court applies "the traditional tools of statutory construction to ascertain whether Congress had a specific intent on the precise question…[including] examination of the text of the statute, its structure, and its

stated purpose" Friends of the Everglades v. South Florida Water Mgmt. Dist., 570 F. 3d 1210, 1222-23 (11th Cir. 2009) (internal citations omitted). The Court may not "add or subtract words from a statute; we cannot rewrite it." Id. at 1224.

The Secretary is authorized to revoke licenses following notice and opportunity for a hearing, 7 U.S.C. § 2149, but the statute does not include any other specific rules regarding the revocation of licenses held by exhibitors, including the circumstances when revocation is appropriate and whether revocation is or is not permanent. Plaintiff contends that the statute does not specifically authorize permanent revocation of licenses, but the statute does not *prohibit* the permanent revocation of licenses either. Thus, the statute is silent on the precise question at issue and does not prohibit the agency's position.

Plaintiff relies on two other statutory provisions to argue that the AWA prohibits permanent revocation of licenses held by exhibitors, but neither removes the ambiguity in the statute. First, Plaintiff invokes 7 U.S.C. § 2158(c)(3) as an example of Congress explicitly authorizing permanent revocation, thus demonstrating that "Congress clearly knew how to spell out the circumstances when the agency could permanently bar a licensee." Complaint, ¶ 43. Of course, Congress also knew how to set forth the opposite point – prohibiting permanent revocation – as well. Since Congress did neither with regard to licenses held by exhibitors, the statute is ambiguous on this point, and, according to Chevron, the issue is therefore left to the agency's discretion. Second, Plaintiff relies on 7 U.S.C. § 2133 regarding the issuance of initial licenses to argue that the agency must issue a license to applicants who meet USDA animal care standards. Id. at ¶ 40. Along with ignoring the discretion granted to the agency in 7 U.S.C. § 2133 ("The Secretary shall issue licenses

8

to…exhibitors…in such form and manner as he may prescribe"), this reading is also nonsensical, as it would potentially require the agency to issue a license to someone the day after having his or her license revoked. None of the other provisions of the AWA change the fact that the revocation provision, 7 U.S.C. § 2149(a), is silent on whether revocation of exhibitor licenses is permanent, thereby leaving the issue for the agency.

### B. The Agency's Regulation is Reasonable in Light of the Statute's Goal of Promoting the Humane Treatment of Animals

As to step two, "'if the statute is silent or ambiguous with respect to the specific issue,'"…the Court must "decide whether the regulation is 'based on a permissible construction of the statute.' To uphold the agency's interpretation under this inquiry, we 'need not conclude that the agency construction was the only one it permissibly could have adopted…or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.'" Scheerer v. U.S. Att'y Gen., 513 F.3d 1244, 1250 (11th Cir. 2008) (quoting Chevron, 467 U.S. at 842-843). The Court must simply decide "whether the agency 'has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design.'" Id. (quoting Lopez v. Davis, 531 U.S. 230, 242 (2001) (internal citation omitted)). "If Congress explicitly leaves a gap in a statute for an agency to fill, 'there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.' A resulting regulation is reviewed only to see if it is arbitrary, capricious, or manifestly contrary to the statute." Wright v. Everson, 543 F.3d 649, 654 (11th Cir. 2008) (quoting Chevron, 467 U.S. at 843-844).

In addition, the Supreme Court has "recognized a very good indicator of delegation meriting Chevron treatment [is] express congressional authorizations to engage in the process

9

of rulemaking or rulings for which deference is claimed." U.S. v. Mead Corp., 533 U.S. 218, 229 (2001). In the instance, the Secretary is expressly authorized to issue rules and regulations necessary to achieve the purposes of the AWA. 7 U.S.C. § 2151. Accordingly, Chevron deference is likely appropriate here.

While Defendants contend, as described more fully below, that Eleventh Circuit precedent demonstrates that 7 U.S.C. § 2149(a) qualifies as an *express* delegation of authority, the regulation challenged by Plaintiff satisfies both the express delegation standard (not being arbitrary or capricious, or manifestly contrary to the statute) and the implicit delegation standard (being reasonable) in light of the purpose of the statute. In Wright, the Eleventh Circuit analyzed an agency's interpretation of a statute regarding who may represent individuals before the Department of the Treasury. 543 F.3d at 654-57. Specifically, 31 U.S.C. § 330 states that the "Secretary of the Treasury may regulate the practice of representatives of persons before the Department of the Treasury." (emphasis added). While Congress did not directly address the precise question of who may represent taxpayers before the IRS, the Eleventh Circuit held, citing Chevron, that "Congress expressly has granted to the Secretary the right to regulate who practices before the IRS in 31 U.S.C. § 330(a) via an express delegation of authority." 543 F.3d at 656. Similarly, here, Congress identified an area in which it was giving the Secretary general authority – license revocation – by setting forth that the Secretary "after notice and opportunity for hearing…may revoke such license…" (emphasis added). Thus, 7 U.S.C. § 2149(a) is an express delegation of authority subject to the arbitrary, capricious, or manifestly contrary to the statute standard.

10

However, even if the slightly more demanding standard for implicit delegation applies, the regulation at issue is a reasonable one in light of the goals of the statute. As a preliminary matter, Count I of the Complaint does not appear to challenge the reasonableness of the regulation in light of the statute's goals, but only whether the permanent revocation is authorized, which is a <u>Chevron</u> step one question. To the extent that the Plaintiff challenges the reasonableness of the regulation under <u>Chevron</u> step two, the AWA was designed to ensure the humane treatment of animals, including in exhibition. <u>See</u> 7 U.S.C. § 2131. The statute governing consequences for violations by licensees sets up a three-tier system of penalties regarding the license itself: (1) temporary suspension of up to 21 days prior to a hearing, and, after a hearing, (2) suspension or (3) revocation. 7 U.S.C. § 2149(a). For the agency to decide that someone who merited the most serious of the three tiers of punishment for licensees – revocation – should not be able to apply for a license in the future is consistent with the goal of promoting the humane treatment of animals. Therefore, the regulation, although strict, is reasonable in light of the goals of the statute. As a result, <u>Chevron</u> deference is required, and Count I should be dismissed.

      **C.**     **The Plaintiff is Not Entitled to a Hearing Because No Facts Relevant to the Agency's Decision Are in Dispute**

Plaintiff relies on 9 C.F.R. § 2.11(b) for the proposition that he is entitled to a hearing as to why his license was denied. Complaint at ¶¶ 36-37. First, the regulation merely provides that "[a]n applicant whose license application has been denied may request a hearing…," so Plaintiff is not entitled to a hearing. Second, "an agency may ordinarily dispense with a hearing when no genuine dispute exists." <u>Veg-Mix, Inc. v. U.S. Dep't of Agric.</u>, 832 F.2d 601, 607 (D.C. Cir. 1987). Here, no dispute exists as to the simple fact that

precludes the issuance of a license: Plaintiff previously had a license revoked. While Plaintiff challenges the validity of the regulation, if the regulation itself is valid, the factual basis for the agency's ruling is not in dispute and so a hearing is unnecessary. Finally, to the extent Plaintiff alleges that the agency violated Plaintiff's due process rights by not providing a hearing, any such failure to provide a hearing was harmless error because Plaintiff does not allege that the result would differ if Plaintiff had received a hearing. See McCarron v. U.S., 84 Fed. Cl. 616, 617 (Fed. Cl. 2008).

## II.   THE AGENCY'S INTERPRETATION OF ITS OWN REGULATION IS REASONABLE, WHICH REQUIRES THE DISMISSAL OF COUNT II

The USDA's interpretation of the regulation prohibiting a revoked licensee from transporting regulated animals and presenting animal acts under the license of another is consistent with both the purpose of the regulatory scheme and the regulation's plain language. In accordance with the substantial deference due to the agency's interpretation of its own regulation, Count II should be dismissed.

The Court "must give substantial deference to an agency's interpretation of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); see also Lyashchynska v. U.S. Att'y Gen., 676 F.3d 962, 970 (2012) ("[c]ourts also give substantial deference to the [an agency's] interpretation of its statutes and regulations"). The "task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson Univ., 512 U.S. at 512 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). The Court "must defer to the Secretary's interpretation unless an 'alternative reading is compelled by the

12

regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" Id. (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).

In this instance, the agency's interpretation of the regulation concerning having one's license revoked is not plainly erroneous or inconsistent with the regulation; in fact, the USDA's interpretation is consistent with the purpose of the statute and the plain language used throughout the regulations. The regulation at issue states that "[a]ny person whose license has been…revoked shall not buy, sell, transport, exhibit or deliver for transportation, any animal..." 9 C.F.R. § 2.10(c). Limiting the interactions with animals of someone who was found sufficiently in violation of the AWA to have his license revoked is consistent with the AWA, which was designed to ensure well-being of animals, including animals in exhibition. 7 U.S.C. § 2131.

The Plaintiff argues that, despite the revocation of his exhibitor's license and the factual basis therefor, he should be allowed to go back to transporting and presenting animals in exhibition. In this instance, the Plaintiff's license was revoked based on allegations of causing harm to lions in his care, operating as a dealer without a license, and violating a previous cease and desist order. Ramos, 322 Fed. Appx. at 816. To allow an individual who procedurally defaulted in response to serious allegations involving harm to animals to perform publicly with animals is plainly inconsistent with the purpose of the AWA and the accompanying regulations. Allowing the Plaintiff to return to the transporting and exhibition of circus animals after his license was revoked would also undermine the agency's attempt to prevent revoked licensees from circumventing the rules. See 9 C.F.R. § 2.10(b)-(c) (setting limits on revoked licensees); see also id. at § 2.11(d) (prohibiting the issuance of a license

that would circumvent the revocation of a license). Accordingly, the Plaintiff cannot argue that this particular regulation was intended to permit a loophole for those whose licenses had been revoked to continue in the exact same capacity by simply working for someone else with a valid license.

For the same reason, the fact that unlicensed individuals can transport and present exotic animals, while individuals whose licenses had been revoked may not, is consistent with the regulations designed to protect the safety of animals. The Plaintiff appears to argue that the agency refusing to allow him to work for a licensed exhibitor is arbitrary and capricious because an unlicensed individual could perform the work that the Plaintiff may not do. Complaint, ¶ 55. However, if the goal of the AWA is to protect animals, then the agency is acting reasonably in treating a person whose license has been revoked for violating the AWA and its regulations differently than an unlicensed individual who has not previously been found to have violated the rules, much less have had a license revoked. Thus, the agency's interpretation of the regulation is not inconsistent with the intent of the regulation.

The Plaintiff also argues that the regulation is nonsensical because it still allows him to handle and train animals. Id. at ¶ 54. However, Plaintiff ignores that if a revoked licensee were prohibited from handling or training animals, he would effectively be barred from owning a household pet. Specifically, the regulations define "handling" to include petting, feeding, cleaning, and training. 9 C.F.R. § 1.1. "Training" is not defined, so standard dictionary definitions would apply, see id., which would then prohibit Plaintiff from training a dog to perform mundane tasks such as rolling over or sitting up. Therefore, the agency's

14

choice to bar certain enumerated commercial activities for those whose licenses have been revoked, but not handling and training, is reasonable.

As for the plain language, the Plaintiff's interpretation of the regulation only makes sense if one rewrites or ignores various elements of the regulatory framework governing the care of animals. As the Plaintiff notes, the term "exhibit" – as used in the regulation prohibiting activities by revoked licensees – is undefined. Complaint, ¶ 50. The Plaintiff's interpretation, however, requires equating the term "exhibitor," which is defined in the statute, with the word "exhibit" in 9 C.F.R. § 2.10(c), which is not. Id. ("The regulation, however, does not define '*exhibit*.' Properly applying the statutory definition, however, Plaintiff is not acting as an *exhibitor* for the reasons stated above.") (emphasis added). To be clear, Defendants do not contend that Plaintiff is acting as an exhibitor; instead, the Defendants' position is that the Plaintiff is a former exhibitor whose license has been revoked by the Secretary, and that, pursuant to 9 C.F.R. § 2.10(c), the Plaintiff may not engage in certain activities, including transporting and presenting animals in a circus act. For the reasons set forth below, there is no basis to treat "exhibit" in 9 C.F.R. § 2.10(c) as equal to the defined term "exhibitor" because doing so ignores the plain language of the regulatory scheme.

First, the Plaintiff's argument – equating "exhibit" and "exhibitor" – ignores how the defined term exhibitor is used in the regulatory scheme. In the event of any ambiguity in the regulation, the Court ought to consider the word in the context of the broader regulatory scheme, rather than in isolation. See Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1278 (11th Cir. 2005) (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988))

15

("federal courts also must consider 'the language and design of the statute as a whole' to determine 'the plain meaning of the statute'"). As the Plaintiff explains, the word "exhibitor" has a specific definition, which includes being one who exhibits to the public for compensation, which is why the Plaintiff contends that he, while being paid by Hawthorn, is not an exhibitor under the statute. Complaint, ¶ 48 ("Hawthorn is an exhibitor, as it owns the tigers and exhibits them for compensation. Plaintiff is not an exhibitor because he neither owns the tigers nor does he directly receive compensation for exhibiting them."). Consistent with the statutory definition, the term exhibitor is used throughout the regulations to describe the burdens of owning or operating a business utilizing animals for exhibition purposes. See, e.g., 9 C.F.R. §§ 2.50-2.55 (identification of animals), 2.75 (record keeping), 2.100 (compliance with standards required), 2.125 (providing business information to APHIS upon request), 2.126 (access for APHIS inspections required). These burdens are not designed to fall on a person like the Plaintiff, who is exhibiting Hawthorn's animals as Hawthorn's contracted employee, but who is not himself an exhibitor as defined in the statute. Thus, the fact that the Plaintiff is not in this instance an exhibitor is irrelevant to whether 9 C.F.R. § 2.10(c) prohibits him as a revoked licensee from exhibiting animals. In fact, Plaintiff's argument ignores that the plain language of § 2.10(c) bars "any person" from engaging in the five enumerated animal-related activities, regardless of person's employment status, and does not apply just to persons who meet the statutory definition of "exhibitor." Assuming, as Plaintiff does, that the term "exhibit" in 9 C.F.R. § 2.10(c) is meant to refer to the defined term exhibitor ignores the definition of the term and how it is used in the AWA regulations.

16

Second, since "exhibit" is undefined, the term must take on its plain meaning, as set forth in the statute, rather than be equated with a separate defined term. 9 C.F.R. § 1.1.[2] In this case, the Plaintiff seeks to avoid the plain meaning of the term "exhibit." In the Complaint, the Plaintiff is careful to characterize the work he seeks to do as "presenting" animals for Hawthorn. See, e.g., Complaint, ¶¶ 9, 21, 22, 24-29. This is a distinction without a difference and has no basis in the AWA regulations, which do not use the word "present" as a distinct category from exhibiting, as Plaintiff attempts to do. By contrast, the plain meaning of the verb "exhibit" is to "present." See Webster's Third New International Dictionary 796 (1986) ("exhibit" defined as "to present to view"). The Plaintiff should not be able to evade the plain meaning of the term "exhibit" as it is used in 9 C.F.R. § 2.10(c) by characterizing his actions as "presenting" animals for an audience, when the common meaning of the verbs "exhibit" and "present" are identical.

Finally, the Plaintiff's interpretation would render the term "exhibit" mere surplusage. As a general rule, a regulation should not be interpreted so that part of the regulation is inoperative. See Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242, 1247 (11th Cir. 2008) (courts should "strive to give effect to every word and provision in a statute when possible"). In this instance, if the word "exhibit" in 9 C.F.R. § 2.10(c) merely prohibited a person whose license has been revoked from acting as an exhibitor, then the word "exhibit" would be superfluous, as a person without a license is *already* prohibiting from acting as an

---

[2] Also, as a general rule of construction, undefined terms should be understood by their common meaning. See Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1329 (11th Cir. 2005) ("[w]here a statute does not define a term, we must give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise").

17

exhibitor. See 7 U.S.C. § 2134 (titled "valid license for dealers and exhibitors required"); 9 C.F.R. § 2.1(a)(1) ("Any person operating or intending to operate as [an]…exhibitor…except persons who are exempted from the licensing requirements under paragraph (a)(3) of this section, must have a valid license"). Thus, the plaintiff's interpretation is unreasonable.

As Plaintiff's argument is inconsistent with basic rules of interpretation – rendering part of the regulation irrelevant, seeking to avoid the plain meaning of an undefined term, and analyzing the key language without regard to the overall regulatory structure – the Plaintiff's interpretation of the statue is not reasonable. Therefore, the Plaintiff's position falls far short of proving that, in light of the substantial deference owed to the agency, the agency's interpretation is plainly erroneous or inconsistent with the regulation.

At its core, the Plaintiff's dispute is with the agency's policy choices. The Plaintiff believes that he should be able to continue presenting animals following a judgment against him related to mishandling animals and other violations. The regulatory scheme under the AWA is designed to protect animals, as well as limit a violator's opportunities to circumvent those rules. The USDA's interpretation of 9 C.F.R. § 2.10(c) prohibiting the Plaintiff from transporting and presenting animals in a circus following such a judgment is consistent with the interpretation and overall purpose of the regulatory scheme. Therefore, because the agency's interpretation of the regulation is due substantial deference, the Plaintiff's request for a declaration that the agency's interpretation of its own regulation is arbitrary and capricious should be dismissed.

18

## CONCLUSION

For all of the foregoing reasons, the Plaintiff's Complaint for declaratory relief should be dismissed with prejudice.

Respectfully submitted, this 12th day of August, 2014.

                A. LEE BENTLEY, III
                United States Attorney

By:   */s/ Michael R. Kenneth*
       MICHAEL R. KENNETH
       Assistant United States Attorney
       Florida Bar No. 44341
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       Telephone:   813-274-6000
       Facsimile:    813-274-6198
       E-Mail:  michael.kenneth@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    William J. Cook, Esq.
    Wcook@barkercook.com

                */s/ Michael R. Kenneth*
                Michael R. Kenneth
                Assistant United States Attorney