UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LANCELOT KOLLMAN,

      Plaintiff,

v.                                  CASE NO. 8:14-cv-1123-T-23TGW

THOMAS J. VILSACK, et al.,

      Defendants.

_____/

## ORDER

Lancelot Kollman is an exotic-animal trainer who held an exhibitor's license under the Animal Welfare Act (AWA).  Thomas J. Vilsack, Secretary of the United States Department of Agriculture, and Chester A. Gipson, Deputy Administrator of Animal Care for the Animal and Plant Health Inspection Service, (collectively, the Department) enforce the AWA, a legislative attempt to advance the humane treatment of animals on exhibit.  Under the AWA and regulations promulgated by the Department, an exhibitor of lions must have a license, which the Department can revoke if the exhibitor violates the AWA or the regulations.  After the death of two lions and Kollman's failure to contest charges against him, the Department revoked Kollman's license to exhibit lions.  *Kollman Ramos v. U.S. Dep't of Agr.*, 322 Fed. Appx. 814, 818 (11th Cir. 2009) (describing the sequence of events in detail and

upholding the revocation after Kollman's default).  Relying on a regulation

prescribing the consequences of revocation, the Department denied Kollman's

application for another license.

Kollman sues for a declaration that, "notwithstanding his earlier license

revocation, [he] is entitled to apply for and obtain a new exhibitor's license" and that,

even without an exhibitor's license, he can "present" animals as an employee of a

licensed exhibitor.  (Doc. 22 at 12, 15)  The Department moves (Doc. 26) to dismiss

the complaint for failure to state a claim.

## I. Count I

Kollman alleges that the Department lacks the authority to "permanently

revoke licenses without the opportunity for reinstatement."  (Doc. 22 ¶ 44)

Specifically, Count I asserts (1) that, despite the revocation of his license, Kollman

may apply for and obtain a new license and (2) that Kollman is entitled to a hearing

to present evidence supporting his license application.

### 1. Revocation and re-application

Section 2149 of the AWA states:

**(a) Temporary license suspension; notice and hearing; revocation**

If the Secretary has reason to believe that any person licensed as
a[n] . . . exhibitor . . . has violated or is violating any provision of this
chapter, or any of the rules or regulations or standards promulgated by
the Secretary hereunder, he may suspend such person's license
temporarily, but not to exceed 21 days, and after notice and
opportunity for hearing, may suspend for such additional period as he

> may specify, or revoke such license, if such violation is determined to
> have occurred.

The AWA fails to define "revoke" or to specify otherwise the consequence of a

revocation.  However, the Department enforces Section 2149 through regulations

such as 9 C.F.R. § 2.10(b), which states, "Any person whose license has been

revoked shall not be licensed in his or her own name or in any other manner . . . ."

Similarly, 9 C.F.R. § 2.11(a)(3) states, "A license will not be issued to any applicant

who . . . has had a license revoked . . . ."  Although the Department's regulations

existed when the Department revoked his license, Kollman argues that he is not

barred forever from obtaining a new license and that the Department impermissibly

interprets "revoke."

The parties agree that *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel*

*Inc.*, 467 U.S. 837 (1984), governs judicial review of an agency's construction of a

statute within the agency's jurisdiction.  Under *Chevron*, if "Congress has directly

spoken to the precise question at issue" and "[i]f the intent of Congress is clear," the

construction of the statute necessarily incorporates Congress's expression.  *Chevron*,

467 U.S. at 842.  However, if the statute is silent or ambiguous, the judicial

interpretation of the statute defers to an administrative interpretation that is "based

on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.  Additionally,

the Supreme Court has "recognized a very good indicator of delegation meriting

*Chevron* treatment in express congressional authorizations to engage in the process of

- 3 -

rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).

By failing to define "revoke," Section 2149 implicitly leaves a "gap for the agency to fill." *Chevron*, 467 U.S. at 843. "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844. Further, Section 2151 of the AWA authorizes the Secretary to "promulgate such rules, regulations, and orders as he may deem necessary in order to effectuate the purposes of this chapter." Thus, the AWA's delegation of authority merits *Chevron* deference.

Kollman argues, "Congress expressly addressed revocation and suspension . . . in section 2149, and nowhere in the statute did it authorize permanent revocation." (Doc. 22 ¶ 45) For contrast, Kollman cites Section 2158(c)(3) (a statute governing the protection of pets), which states, "Any dealer who violates this section three or more times shall have such dealer[']s license permanently revoked." Kollman argues that Section 2158(c)(3)'s use of "permanently revoke" confirms that "Congress clearly knew how to spell out the circumstances when the agency could permanently bar a licensee." (Doc. 22 ¶ 47) However, although the wording of one statute might aid in the interpretation of another statute, "drafters . . . often use different words to denote the same concept." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012).

As the Department explains, Section 2149 (the statute at issue) establishes a "three-tier system of penalties," which range from a suspension not exceeding twenty-one days to, after notice and the opportunity for a hearing, a longer suspension and finally to a revocation.  (Doc. 26 at 11)  "For the agency to decide that someone who merited the most serious of the three tiers of punishment for licensees — revocation — should not be able to apply for a license in the future is consistent with the goal of promoting the humane treatment of animals."  (Doc. 26 at 11)

Although the AWA fails to specify the consequence of a suspension, the Department construes "suspend" to mean that a person cannot apply for and obtain a new license during a suspension.  *See* 9 C.F.R. § 2.11(a)(3) (stating that a "license will not be issued to any applicant . . . whose license is suspended").  Similarly, although the AWA fails to specify the consequence of a revocation, the Department construes "revoke" to mean not only a permanent revocation but a prohibition against applying for another license.  Accordingly, the Department offers a "reasonable interpretation" of Section 2149, and, therefore, the Department's interpretation is based on a "permissible construction of the statute."

However, even assuming that the Department impermissibly interprets Section 2149, a separate section — Section 2133 — authorizes the Department's refusal to issue a license to a person whose license the Department revoked. Section 2133 (the statute governing the licensing of exhibitors) states, "The Secretary

shall issue licenses to . . . exhibitors upon application therefor in such form and

manner as he may prescribe . . . ."  Thus, Section 2133 grants to the Department the

authority to prescribe the requirements of a license.  The Department validly

exercised this authority by promulgating 9 C.F.R. § 2.10(b) ("Any person whose

license has been revoked shall not be licensed in his or her own name or in any other

manner . . . .") and 9 C.F.R. § 2.11(a)(3) ("A license will not be issued to any

applicant who . . . has had a license revoked . . . .").

### 2. Evidentiary hearing

Kollman asserts entitlement to a hearing under 9 C.F.R. § 2.11(b), which

states, "An applicant whose license application has been denied may request a

hearing in accordance with the applicable rules of practice for the purpose of showing

why the application for a license should not be denied."  However, rather than

entitling an applicant to a hearing, 9 C.F.R. § 2.11(b) permits an applicant to

"request" a hearing.  Thus, the Department complied with 9 C.F.R. § 2.11(b) by

permitting Kollman to request a hearing.

Also, Kollman asserts that "a hearing must be afforded before an individual

can be denied the right to practice his or her profession" because "the right to practice

one's chosen profession is a liberty interest under the due process clause."  (Doc. 22

¶ 41)  However, Kollman overlooks Section 2149, which requires "notice and an

opportunity for hearing" before the revocation of a license.  Complying with

Section 2149, the Department afforded Kollman an opportunity for a hearing before

revoking his license, but as *Kollman Ramos v. United States Department of Agriculture*,

322 Fed. Appx. at 821, determines, Kollman waived the opportunity by failing to

respond to the allegations against him.  After a "fact intensive" review of the "overall

fairness of the proceedings," *Kollman Ramos*, 322 Fed. Appx. at 824, rejects

Kollman's due process argument and holds that, "[T]he Judicial Officer's Decision

and Order [revoking Kollman's license] did not violate the principles of fundamental

fairness embodied in the Due Process Clause of the Fifth Amendment to the United

States Constitution . . . ."

Further, even if Kollman received a hearing to offer evidence in support of his

application for a new license, the Department's regulations, including 9 C.F.R.

§§ 2.10(b) and 2.11(a)(3), require the application's denial.  Kollman has no right to —

and the Department is not obligated to grant — a futile and purposeless hearing.

## II. Count II

Count II demands a declaration that as an employee of a licensed exhibitor

Kollman can "present" an animal.  (Doc. 22 at 15)  The Department moves

(Doc. 26) to dismiss and cites 9 C.F.R. § 2.10(c), which states that a person whose

license the Department has revoked may not "exhibit" an animal.  Because neither

the AWA nor the regulations define "exhibit," the Department argues that the term's

common meaning[*] applies.  Kollman responds that the correct definition of "exhibit"

---

[*]According to the *American Heritage Dictionary* (5th ed. 2014), "exhibit" means "to present for others to see."

should accord with the definition of "exhibitor," a term defined by both the AWA and the regulations.  The Department "do[es] not contend that [Kollman] is acting as an exhibitor." (Doc. 26 at 15)  Kollman argues that, because he is not an "exhibitor," he is not "exhibiting" and that therefore the Department's refusal to allow him to "present" an animal as an employee of a licensed exhibitor is "arbitrary and capricious and violates the AWA and [the Department's] own regulations and practices."  (Doc. 22 ¶ 62)  Count II states a claim for a declaratory judgment.

### CONCLUSION

The Department's motion (Doc. 26) to dismiss Count I is **GRANTED**, and the Department's motion (Doc. 26) to dismiss Count II is **DENIED**.  No later than **APRIL 17, 2015**, Kollman may amend Count I.

ORDERED in Tampa, Florida, on April 7, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE