UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LANCELOT KOLLMAN,

       Plaintiff,

                                            Case No. 8:14-cv-1123-T-27TGW

v.

THOMAS J. VILSACK, Secretary of the
United States Department of Agriculture, et al.

       Defendants.
_____/

**DEFENDANTS' TRIAL BRIEF**

Pursuant to the Court's November 24, 2014 Order, the Defendants file a Trial Brief with citations of authority and with argument of the disputed issues likely to arise at trial:

**I)**     **The Agency's Interpretation of 9 C.F.R. § 2.10(c) Is Consistent with the Plain Language of the Regulation and Is Otherwise Reasonable**

The USDA's interpretation of its regulation placing limits on the animal-related activities of revoked licensees is consistent with the plain language of the regulation and the regulatory scheme. The regulation states that "[a]ny person whose license has been…revoked shall not buy, sell, transport, exhibit or deliver for transportation, any animal..." 9 C.F.R. § 2.10(c). Applying the dictionary definition of "exhibit" and thereby limiting public activities involving regulated animals by persons who have had their AWA licenses revoked because of violations of the AWA is consistent with the AWA, which was

designed to ensure the well-being of animals and to impose consequences on those who violate the regulations.  7 U.S.C. §§ 2131, 2149.

It is undisputed that the verb "exhibit" is not defined in the statute or the regulations.  Therefore, the term "exhibit" in 9 C.F.R. § 2.10(c) must be given the meaning attributed to it "in general usage as reflected by definitions in a standard dictionary."  9 C.F.R. § 1.1.[1]  Although in the Second Amended Complaint, Plaintiff eschews the term "exhibit" and instead describes his work for Hawthorn as "presenting" animals, Dkt. 34, ¶¶ 9, 21, 22, 29-33, this is a distinction without a difference.  The AWA regulations do not use the verb "present"; however, the dictionary definition of the verb "exhibit" is "to present" something for viewing.  See, e.g., Dkt. 50, Statement of Undisputed Fact, ¶ 27; Webster's Third New International Dictionary 796 (1986) ("exhibit" means "to present to view"); In re: Martine Colette, AWA Docket No. 03-0034 at p. 5 (applying dictionary definition to "exhibit") (Dkt. 26-1).

While Defendants need only show that the agency's interpretation is reasonable, Plaintiff's proposed interpretation is not reasonable.  Specifically, the Plaintiff's interpretation of the regulation only makes sense if one ignores the plain language of the regulation, rewrites the regulation, and ignores the regulatory framework of the AWA.  First, Plaintiff correctly notes that the verb "exhibit," as used in the regulation prohibiting activities by revoked licensees, is undefined.  Dkt. 34, ¶ 54.  However, the Plaintiff's reading of 9

---

[1] Also, as a general rule of construction, undefined terms should be understood by their common meaning.  See Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1329 (11th Cir. 2005) ("[w]here a statute does not define a term, we must give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise").

2

C.F.R. § 2.10(c) requires equating that undefined verb "exhibit" with the statutorily defined noun "exhibitor." Id. ("The regulation, however, does not define '*exhibit*.' Properly applying the statutory definition, however, Plaintiff is not acting as an *exhibitor* for the reasons stated above.") (emphasis added). As noted previously, this is contrary to the explicit instructions in the regulations. In addition, the two words are not interchangeable. In fact, the USDA's Judicial Officer has previously instructed APHIS not to confuse the "definition of 'exhibiting' with the statutory term 'exhibitor.'" In re: Martine Colette, AWA Docket No. 03-0034 at p. 7 (July 9, 2010) (previously submitted at Dkt. 26-1).[2] There is no basis to treat the word "exhibit" in 9 C.F.R. § 2.10(c) as the equivalent of the defined term "exhibitor." To do so ignores the plain language of the regulation.

Second, Plaintiff's argument – equating "exhibit" and "exhibitor" – ignores how the defined term exhibitor is used in the regulatory scheme. In the event of any ambiguity in the regulation, the Court should consider the word in the context of the broader regulatory scheme, rather than in isolation. See Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1278 (11th Cir. 2005) (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988)) ("federal courts also must consider 'the language and design of the statute as a whole' to determine 'the plain meaning of the statute'"). As the Plaintiff explains, the word "exhibitor" has a specific definition, which includes being one who exhibits to the public for compensation, which is why the Plaintiff contends that he, while working for a company that

---

[2] To be clear, Defendants do not contend that Plaintiff, in his capacity as an employee of Hawthorn, is an "exhibitor." Defendants' position is that Plaintiff is a former exhibitor whose exhibitor's license was revoked, and that, pursuant to 9 C.F.R. § 2.10(c), he may not engage in five activities with respect to regulated animals, either for himself or as an employee of another person.

controls the animals, is not an exhibitor under the statute. Dkt. 34, ¶¶ 51-52. Consistent with the statutory definition, the term exhibitor is used throughout the regulations to describe the burdens of owning or operating a business utilizing animals for exhibition purposes. See, e.g., 9 C.F.R. §§ 2.50-2.55 (identification of animals), 2.75 (record keeping), 2.100 (compliance with standards required), 2.125 (providing business information to APHIS upon request), 2.126 (access for APHIS inspections required). These burdens are not designed to fall on a person like the Plaintiff, who was exhibiting Hawthorn's animals as Hawthorn's contracted employee, but who is not himself an exhibitor as defined in the statute. Thus, the fact that the Plaintiff is not in this instance an exhibitor is irrelevant to whether 9 C.F.R. § 2.10(c) prohibits him as a revoked licensee from exhibiting animals.

In fact, Plaintiff's argument ignores that the plain language of § 2.10(c) bars "any person" – not just persons who meet the statutory definition of "exhibitor" – from engaging in the five enumerated animal-related activities, regardless of employment status. In addition, the word "exhibit" is used in other regulations that apply to "any person" – not just to exhibitors. For example, 9 C.F.R. § 2.60 states that "no person shall buy, sell, *exhibit*, use for research, transport, or offer for transportation, any stolen animal." (emphasis added). Accepting Plaintiff's view that the term "exhibit" in 9 C.F.R. § 2.10(c) must mean "exhibitor" ignores both the definition of the term and how it is used in other provisions of the regulations.

Finally, the Plaintiff's interpretation would render the term "exhibit" mere surplusage. As a general rule, a regulation should not be interpreted so that part of the regulation is inoperative. See Babbitt v. Sweet Home Chapter of Cmtys. For a Great Or., 515 U.S. 687,

4

698 (1995) ("A reluctance to treat statutory terms as surplusage supports the reasonableness of the Secretary's interpretation"); Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242, 1247 (11th Cir. 2008) (courts should "strive to give effect to every word and provision in a statute when possible").  If, as Plaintiff urges, the word "exhibit" in 9 C.F.R. § 2.10(c) merely means that a person whose license has been revoked cannot operate as an "exhibitor" as that term is defined in the AWA, then the word "exhibit" would be superfluous, as a person without a license is *already* prohibited from acting as an exhibitor.  See 7 U.S.C. § 2134 (titled "valid license for dealers and exhibitors required"); 9 C.F.R. § 2.1(a)(1) ("Any person operating or intending to operate as [an]…exhibitor…except persons who are exempted from the licensing requirements under paragraph (a)(3) of this section, must have a valid license").

Therefore, the Defendants' interpretation of 9 C.F.R. § 2.10(c) is the only interpretation consistent with the plain language and the overall regulatory scheme.

## II)     Deference Applies to an Agency's Interpretation of its Own Regulation Unless Certain Conditions – Not Applicable Here – are Met

Plaintiff alleges that the agency's interpretation of section 2.10(c) is arbitrary and capricious.  However, unless (1) the agency's interpretation is contrary to the plain meaning of the regulation, (2) the agency engaged in an ad hoc rationalization for litigation, or (3) the agency abandoned a regularly-advocated position, the Court must give deference to the agency's interpretation.

In general, the Court "must give substantial deference to an agency's interpretation of its own regulations."  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); see also Lyashchynska v. U.S. Att'y Gen., 676 F.3d 962, 970 (11th Cir. 2012) ("[c]ourts also give

substantial deference to the [an agency's] interpretation of its statutes and regulations"). The "task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson Univ., 512 U.S. at 512 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). The Court "must defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" Id. (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).[3] In this case, for the reasons stated above, the agency's interpretation is consistent with the plain language and the regulatory structure, so it cannot be "plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ., 512 U.S. at 512.

Therefore, deference applies unless one of two other conditions is met. First, agency interpretations are not entitled to deference when they are "agency litigation positions that are wholly unsupported by regulations, ruling, or administrative practice. To the contrary, we have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question….Deference to what appears to be nothing more than an agency's convenient litigation position would be entirely inappropriate." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212-13 (1988). See also Total Marine Svcs., Inc. v. Director, Office of Worker's Compensation Programs, 87 F.3d 774, 777 n.2 (5th Cir. 1996) (citing Bowen and rejecting claim for deference for agency construction of statute that was just a "litigation position"); Northwest Forest Resource

---

[3] The publication of the regulation itself, as part of a large collection of AWA regulations, provides no insight as to the Secretary's intent at the time. See 54 FR 36123 (1989).

6

Council v. Pilchuck Audubon Society, 97 F.3d 1161, 1168 n.3 (9th Cir. 1996) (citing Bowen, the Ninth Circuit ruled that the district court was wrong not to apply deference to agency interpretation of an ambiguous statute when the agency's position was "more than an agency litigation position"); Animal Legal Defense Fund v. U.S. Dep't of Agric., 789 F.3d 1206, 1221-22 (11th Cir. 2015)  (position of the USDA not just taken during litigation so Bowen does not apply).[4]  Here, the position of the agency was not adopted in response to litigation, but rather to resolve an inconsistency within the agency at the request of Plaintiff's employer.  The agency's position, which has been consistent since at least January 31, 2013, is thus due deference.

Second, an agency's interpretation is not due deference where it contradicts a "regularly advocated, uniform interpretation."  Sierra Club v. Johnson, 436 F.3d 1269, 1282 (11th Cir. 2006).  For example, in Sierra Club, the Eleventh Circuit applied deference to the agency's interpretation of a regulation when the plaintiffs could not prove that a memo with a contrary interpretation represented a "regularly advocated, uniform interpretation" of the regulation.  Id.  In this case, while Dr. Gibbens believed that the Plaintiff could always exhibit for someone with a valid exhibitor license, Dr. Gibbens did know whether his eastern

---

[4] To the extent the agency must demonstrate that its position is not "wholly unsupported by regulations, ruling, or administrative practice," first, the agency's position is supported by the regulation because it follows the regulation's plain language.  Second, this is not a case where the agency's position is unsupported by ruling.  The agency's interpretation is consistent with a final decision of the USDA's Judicial Officer, who speaks for the Secretary of Agriculture.  In re: Martine Colette, AWA Docket No. 03-0034 at p. 7 (July 9, 2010) (Dkt. 26-1).  In that AWA proceeding, the Judicial Officer stated that the agency should not confuse the defined term "exhibitor" with the undefined term "exhibit."  Nevertheless, that is exactly what Plaintiff urges here.  Moreover, for the reasons set forth below, the agency's position has been supported by administrative practice both before (in part) and after the agency set forth its position.

region counterpart (Dr. Goldentyer) or supervisors (Dr. Morgan and Dr. Gipson) shared his understanding, Dkt. 42 at 22:18-23:3, nor is there any written guidance setting forth a prior agency interpretation of 9 C.F.R. § 2.10(c).  In fact, Dr. Gipson and Dr. Goldentyer both understood that a revoked licensee could not exhibit, which was consistent with what agency attorneys told third parties in early January 2013.   Thus, the agency's position as set forth in the January 31, 2013 letters to the Plaintiff and his employer challenged in this litigation is not contrary to a regularly advocated position and is therefore due deference.

Plaintiff has incorrectly implied that deference is only due if agency takes a constant and unchanging position.  Dkt 49 at 11.  However, as demonstrated by Sierra Club, this is not correct.  436 F.3d at 1282.  As stated in U.S. Steel Mining Co., LLC v. Jones, 386 F.3d 977, 986 (11th Cir. 2004), "we do not afford deference to ad hoc positions of agencies adopted in reaction to the exigencies of litigation; rather, deference is due when an agency has taken a constant and unchanging – and reasonable – position on the proper interpretation of its regulation." 386 F.3d 977, 986 (11th Cir. 2004).  In other words, taking a constant and unchanging position means not simply adopting a position in litigation, so if the position adopted since January 31, 2013 is constant, then deference can apply.  See Rock of Ages Corp. v. Sec'y of Labor, 170 F.3d 148, 156 (2d Cir. 1999) ("an agency's interpretation of a regulation is not underserving of deference merely because it is advanced by the agency for the first time") (citing Martin, 499 U.S. at 156).[5]   In addition, if Plaintiff were correct that deference is only due if an agency position is constant and unchanging, Plaintiff should be

---

[5] At the least, partial deference is due. Georgia, Dep't of Medical Assistance v. Shalala, 8 F.3d 1565, 1568 (11th Cir. 1993) ("[e]ven if its position has changed across time, the agency's interpretation is still due deference, although the consistency of its position is a factor in the extent of deference given").

able to identify a robust body of case law analyzing when deference begins based on exactly how long the agency has held a position and what qualifies as regularly advocated. Instead, agency interpretations of regulations are due deference as long as they are not advanced for purposes of litigation and do not contradict a long-held agency position. Thus, deference applies to the agency's interpretation of 9 C.F.R. § 2.10, which simply applies the plain language.

In addition, inconsistency within an agency does not preclude deference. See Sierra Club, 436 F.3d at 1282-83 (applying a deferential standard of review to the agency's interpretation despite an inconsistency in the interpretation of regulations as to when permits could be issued); see also Animal Legal Defense Fund, 789 F.3d at 1221-22 (a letter from Dr. Goldentyer that was not perfectly consistent with prior interpretations still allowed for Chevron deference to apply to the agency's regulation). Therefore, simply because the agency's January 31, 2013 sought to resolve a prior inconsistency, that does not preclude deference for the agency's current interpretation of 9 C.F.R. § 2.10(c).

### III.     The Agency's Position is Consistent with the AWA's Purpose

Although the purpose of the regulation is not relevant as the agency's interpretation is not "plainly erroneous or inconsistent with the regulation," Thomas Jefferson Univ., 512 U.S. at 512, the agency's position is also consistent with the purpose of the AWA and its regulations.

Plaintiff argues that, despite the revocation of his exhibitor's license and the factual basis therefor, he should be allowed to transport and present animals in exhibition. The Plaintiff's license was revoked based on his admission by default of allegations of causing

9

harm to lions in his care, operating as a dealer without a license, and violating a previous cease and desist order. Ramos v. U.S. Dep't of Agric., 322 Fed. Appx. 814, 816 (11th Cir. 2009). To allow an individual who has been found to have violated the AWA and the regulations, and had his license revoked, to resume performing publicly with animals is inconsistent with the purpose of the AWA. Allowing the Plaintiff to continue to transport and to exhibit circus animals after his license was revoked would also undermine the agency's ability to deter licensees from committing violations, because it would appear that revocation carries no real consequences. See 9 C.F.R. § 2.10(b)-(c) (setting limits on revoked licensees); see also id. at § 2.11(d) (prohibiting the issuance of a license that would circumvent the revocation of a license). Plaintiff cannot assert that the USDA intended to create a loophole for revoked licensees to continue in the exact same or similar capacity simply by working for someone else with a valid license.

For the same reason, the fact that unlicensed persons may legally transport and present animals, but revoked licensees may not is consistent with the regulations designed to protect animals and to sanction those who have violated the AWA and the regulations. The Plaintiff appears to argue that the agency is not allowing him to work for a licensed exhibitor is arbitrary and capricious because an unlicensed person could work for a licensed exhibitor. Dkt. 34, ¶ 61. However, the other unlicensed person in Plaintiff's hypothetical is not a "person whose license has been revoked." Because the purpose of the AWA is to ensure that animals are cared for humanely, and the USDA is authorized to penalize those who have violated the AWA and the regulations, it is reasonable to treat a person whose license has

10

been revoked differently than a person who has not been sanctioned for violating the AWA and its regulations.

Plaintiff also argues that the regulation is nonsensical because it does not bar him from handling and training animals, so he could still possibly mistreat them. Id. at ¶ 59. First, this argument – that the agency's position is unreasonable because it does not limit Plaintiff from engaging in <u>all</u> possible animal activities – really represents a challenge to the regulation itself for not being severe enough, rather than a challenge to the agency's *interpretation* of the regulation.

Second, the Eleventh Circuit just rejected an analogous argument made (ironically) by an animal rights organization that a USDA interpretation could permit mistreatment of animals. In <u>Animal Legal Defense Fund</u>, animal rights organizations argued that the agency's interpretation of a regulation was unreasonable because it allowed the USDA to renew licenses for organizations that were not in full compliance with AWA standards. 789 F.3d at 1224 (PETA was also a plaintiff in the case). The Eleventh Circuit rejected the plaintiffs' argument that the agency's position amounted to the sanctioning of animal abuse and was thus impermissible and instead found the regulations to be a reasonable use of the agency's delegated authority in light of limited resources and the requirements of due process. <u>Id.</u>; <u>see</u> <u>also</u> <u>Howmet v. EPA</u>, 614 F.3d 544, 553 (D.C. Cir. 2010) (even "if a regulated entity has proposed an interpretation that might comport with the statutory scheme equally well or even better," a reasonable interpretation of the statute must be upheld). Here, it is similarly reasonable for the agency to enforce a regulation in a way that does impose

limits on a revoked licensee without completely destroying a person's ability to make a living with animals in some capacities.

Therefore, the agency's interpretation of 9 C.F.R. § 2.10(c) is consistent with the purpose of the AWA.

Respectfully submitted, this 28th day of October, 2015.

        A. LEE BENTLEY, III
        United States Attorney

By:   */s/ Michael R. Kenneth*
       MICHAEL R. KENNETH
       Assistant United States Attorney
       Florida Bar No. 44341
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       Telephone:    813-274-6000
       Facsimile:     813-274-6198
       E-Mail:  michael.kenneth@usdoj.gov

       SEAN P. FLYNN
       Deputy Chief, Civil Division
       Assistant United States Attorney
       USAO No. 111
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       Telephone:    813-274-6000
       Facsimile:     813-274-6198
       E-Mail:  sean.flynn2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

William J. Cook, Esq.
Wcook@barkercook.com

                                          */s/ Michael R. Kenneth*
                                          Michael R. Kenneth
                                          Assistant United States Attorney