UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LANCELOT KOLLMAN,

   Plaintiff,

v.    CASE NO. 8:14-cv-1123-T-23TGW

THOMAS J. VILSACK, et al.,

   Defendants.
_____/

**ORDER**

Lancelot Kollman, an exotic-animal trainer, sues (Doc. 34) Thomas J. Vilsack, the United States Secretary of Agriculture, and Chester A. Gipson, a "deputy administrator of animal care" for the Animal and Plant Health Inspection Service (APHIS).[1] Under the Secretary of Agriculture's regulations implementing the Animal Welfare Act (AWA), Kollman sues for a declaration that, at a circus maintained by his employer, Hawthorn Corporation, he may publicly perform — with a tiger — a "tiger act." The defendants move (Doc. 39) for summary judgment.

**BACKGROUND**

**1. Statutory and Regulatory Framework**

The AWA (7 U.S.C. §§ 2131–2159) regulates the housing, sale, transport, treatment, and exhibition of animals. Captured at Section 2131, Congress's purpose

---

[1] APHIS is an agency within the United States Department of Agriculture (USDA). This order denominates APHIS and the USDA collectively as the USDA.

for enacting the AWA includes ensuring that animals intended "for exhibition . . . are provided humane care and treatment" and ensuring that animals are treated humanely "during transportation in commerce." Section 2134 requires that an exhibitor of an animal possess a license. Section 2132(h) defines "exhibitor" as a "person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation." Section 2132(a) defines "person" as an "individual, partnership, firm, joint stock company, corporation, association, trust, estate, or other legal entity."

Section 2143 directs the Secretary to enforce minimum requirements for "the humane handling, care, treatment, and transportation of animals" by an exhibitor. If an exhibitor violates the AWA or the implementing regulations, Section 2149 authorizes the Secretary to fine the exhibitor, to suspend the exhibitor's license, and after notice and opportunity for a hearing to revoke the exhibitor's license.

Section 2151 authorizes the Secretary to promulgate regulations (9 C.F.R. §§ 2.1–2.153) implementing the AWA. Section 2.10(c) states that a "person whose license has been suspended or revoked shall not buy, sell, transport, exhibit, or deliver for transportation, any animal during the period of suspension or revocation." Similar to the statute, the regulations include a definitions section (9 C.F.R. § 1.1). The definitions for "exhibitor" and "person" in Section 1.1 are identical to the

definitions in the AWA.[2]  Similar to the statute, the regulations contain no definition for the verb "exhibit."  However, Section 1.1 provides that "[w]ords undefined in [Section 1.1] shall have the meaning attributed to them in general usage as reflected by definitions in a standard dictionary."

**2. Factual Background**

Before 2009, the Secretary licensed Kollman as an exhibitor under the AWA.  (Doc. 34 ¶ 10)  After the death of two lions and after Kollman failed to contest charges against him, the Secretary revoked Kollman's license.  *See Kollman Ramos v. USDA*, 322 Fed. Appx. 814, 818 (11th Cir. 2009) (Cohill, J.) (describing the events in detail and upholding the revocation).

After the Secretary revoked Kollman's license, Hawthorn, a company that holds an exhibitor license, hired Kollman to train a "tiger act" for performance at circuses throughout the United States.  (Doc. 34 ¶ 21)  Hawthorn originally intended that Kollman would train the tigers and that another Hawthorn employee would perform the tiger act at the circuses.  (Doc. 49 at 2)  But, because Hawthorn "was unable to find" another employee, Hawthorn asked Kollman to travel with the tigers and perform the tiger act.  (Doc. 49 at 3)  In March 2012, Kollman began to perform the tiger act on behalf of Hawthorn.  (Doc. 49 at 3)

---

[2] Although the statutory definition and the regulatory definition of "exhibitor" are identical, the definitions include an illustrative list of examples that qualify as an "exhibitor" and an illustrative list of examples that fail to qualify as an "exhibitor." A comparison reveals that the regulatory definition adds examples not included in statutory definition.

In October 2012, Hawthorn contracted to perform the tiger act at the "Universoul Circus." (Doc. 49 at 4)  Around this time, a director of People for the Ethical Treatment of Animals (PETA) observed Hawthorn's tiger act. (Doc. 49 at 4) Upset about Kollman's participation in the tiger act, the PETA director sent Robert Gibbens, a "western regional director" in the USDA, an e-mail insisting that the USDA "shut down this illegal exhibit immediately and immediately suspend Hawthorn's license." (Doc. 42 at 49)

In response to the e-mail from the PETA director, Gibbens opened an investigation into Kollman's participation in Hawthorn's tiger act.  In October 2012, Gibbens believed that the AWA and the Secretary's regulations permitted Kollman to exhibit tigers as a Hawthorn employee. (Doc. 42 at 11)  Gibbens explained to the PETA director that "having his license revoked doesn't prevent [Kollman] from being a bona fide employee of another licensee." (Doc. 42 at 51)  In December 2012, after a USDA investigator confirmed Kollman's employment with Hawthorn, Gibbens sent to other USDA employees an e-mail concluding that "the matter can be closed with no further action at this time." (Doc. 42 at 124)

Despite Gibbens' e-mail, the USDA continued to receive complaints about Kollman and Hawthorn.[3]  After receiving the additional complaints, the USDA re-opened the investigation into Kollman's participation in Hawthorn's tiger act.  As

---

[3] The USDA received complaints from PETA; from In Defense of Animals; and from others. A PETA "legal fellow" sent the USDA an e-mail asserting that, while he performed the tiger act on behalf of Hawthorn, Kollman beat two tigers. (Doc. 44 at 158)

- 4 -

a result of this investigation, the USDA determined that the Secretary's regulations prohibit Kollman from exhibiting animals as an employee of Hawthorn.

In a January 2013 letter to Kollman and Hawthorn, Gipson explained that the "exhibition of . . . animals by a person whose license has been revoked would constitute a violation of section 2.10(c)." (Doc. 43 at 40) Gipson warned that a licensed exhibitor employing Kollman to engage in actions prohibited by Section 2.10(c) "risks being subject to an administrative action to terminate his or her Animal Welfare Act license." (Doc. 43 at 40)

## DISCUSSION

The complaint seeks a declaration that under Section 2.10(c) Kollman may present the tiger act as an employee of Hawthorn, a licensed exhibitor. (Doc. 34 ¶¶ 50–62) Specifically, Kollman argues that Section 2.10(c) does not apply to him because he is not an exhibitor.

**1. Kollman is barred from presenting animals on behalf of Hawthorn.**

The parties agree that an employee who exhibits an animal on behalf of an employer that is a licensed exhibitor is not an exhibitor under the statute and the regulations. (Doc. 34 ¶ 52; Doc. 39 at 11) Pragmatic reasons support this conclusion. As noted by the defendants, the statute and the regulations (1) require that an exhibitor of an animal possess a license (*See* 7 U.S.C. §§ 2133, 2134) and (2) subject the exhibitor to burdens, including requirements for record creation and retention (*See, e.g.*, 7 U.S.C. § 2140), which "are not designed to fall on a . . .

- 5 -

contracted employee." (Doc. 39 at 13)  Therefore, although a company that contracts to exhibit a tiger act at a circus is an exhibitor, the company's employee who performs the tiger act at the circus is not an exhibitor and needs no license under the statute and the regulations.[4]

Kollman argues that, because as a general matter an employee of a licensed exhibitor may exhibit an animal on behalf of his employer, Kollman may exhibit the tiger act on behalf of Hawthorn.  (Doc. 49 at 15)  Kollman's argument fails because a more restrictive regulation, Section 2.10, applies to "[l]icensees whose licenses have been suspended or revoked."  Under Section 2.10(c), "any person whose license has been suspended or revoked" may not "buy, sell, transport, exhibit, or deliver for transportation, any animal during the period of suspension or revocation." Section 2.10(c) expressly applies not only to an exhibitor with a revoked license but, more broadly, to "[a]ny person" with a revoked license.  The statute and the regulations define "person" as an "individual, partnership, firm, joint stock company, corporation, association, trust, estate, or other legal entity."  Regardless of his status

---

[4] Although the defendants agree that this employee exception exists, the defendants fail to identify in the text of the AWA or the regulations a basis for the exception. In contrast, Kollman asserts that the employee exception is found in the definition of "exhibitor." (Doc. 49 at 13–15) The statute and the regulations define "exhibitor" as a person who exhibits to "the public for compensation" an animal that is "purchased in commerce." Kollman asserts that he is not an exhibitor because he neither owns the tigers in the tiger act (Hawthorn owns the tigers) nor receives for exhibiting the tiger act payment directly from "the public" (Hawthorn pays Kollman). (Doc. 34 ¶¶ 51–52) Stated differently, under Kollman's interpretation, the definition of exhibitor contains two implied elements — the exhibitor (i) must exhibit his own animal and (ii) must receive from the public compensation for exhibiting.

as a Hawthorn employee, Section 2.10(c) clearly prohibits Kollman, an individual with a revoked license, from exhibiting an animal.

Attempting to avoid Section 2.10(c), Kollman invents a distinction between the verb "exhibit," which is included in Section 2.10(c), and the verb "present," which is not included in the relevant sections of the statute or the regulations. (*See* Doc. 49 at 13–14) Kollman argues that "exhibit," which the statute and the regulations leave undefined, incorporates the definition of "exhibitor." Thus, according to Kollman, to exhibit an animal, a person (1) must own the animal and (2) must receive compensation directly from the public in return for exhibiting the animal. (Doc. 32 ¶¶ 51–56; Doc. 49 at 13–14) Kollman argues that, if either element is absent, the statute and regulations identify the person's conduct not as exhibiting but rather as presenting, an act not prohibited by Section 2.10(c).

Kollman's argument fails because no basis for Kollman's distinction appears in the statute or the regulations. Rather, Section 2.10(c) states that a person — an "individual" — with a revoked license may not exhibit an animal. Although the regulations fail to define the verb "exhibit," Section 1.1 provides that an undefined word retains "the meaning attributed to [the word] in general usage as reflected by definitions in a standard dictionary." According to the *American Heritage Dictionary* (5th ed. 2016), "exhibit" means "to present for others to see." Thus, under Section 2.10(c), if an "individual," including an employee of a licensed exhibitor, has a revoked license, the person may not "present for others to see" an animal "during

the period of . . . revocation." Accordingly, Kollman may not "present" the tiger act at circuses on Hawthorn's behalf.  In other words, the statute and the regulations define "exhibitor" as a person who exhibits to "the public for compensation" an animal that is "purchased in commerce."  The statutory and regulatory definition of "exhibitor" is narrower than the dictionary definition of "exhibit."  As a result, every person who is an exhibitor exhibits but not every person who exhibits is an exhibitor.

Kollman incorrectly argues that "interpreting [Section 2.10(c)] to allow [Kollman] to train and handle animals behind the scenes while preventing him from showing them to crowds of people" is "inconsistent with the purpose of the AWA." (Doc. 34 ¶ 59; Doc. 49 at 14)  Section 2.10(c) includes nothing about "training" an animal or "handling" an animal, and Kollman fails to explain why Section 2.10(c) or the other regulations must prohibit a person with a revoked license from engaging in those actions.  Instead, Section 2.10(c) prohibits a person with a revoked license from buying, selling, transporting, delivering for transportation, and exhibiting an animal.  Prohibiting a person with a revoked license from these actions is consistent with the AWA's directive to the Secretary to promulgate regulations enforcing the statute and with the AWA's stated purpose of ensuring the "humane treatment" of an animal that is "intended for exhibition" and in ensuring the "humane treatment" of an animal "during transportation in commerce."  *See* 7 U.S.C. §§ 2131, 2149, 2151.

**2. Agency deference is unnecessary.**

As a general rule, an agency's interpretation of the agency's regulation is entitled to deference unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Zhou Hua Zhu v. U.S. Atty. Gen.*, 703 F.3d 1303, 1309 (11th Cir. 2013) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Kollman argues that the Secretary's interpretation of Section 2.10(c) is entitled to no deference because, between December 2012 and January 2013, the Secretary's interpretation changed as a result of pressure from PETA and other interest groups. (Doc. 49 at 11) However, deference to an agency's interpretation of the agency's regulation is necessary "only when the language of the regulation is ambiguous." *Zhou Hua Zhu*, 703 F.3d at 1309; *accord Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1303 n.12 (11th Cir. 2001). Section 2.10(c) presents neither an ambiguity nor, consequently, an occasion to resolve whether the Secretary's interpretation of Section 2.10(c) warrants deference.

## CONCLUSION

Accordingly, the defendants' motion (Doc. 39) for summary judgment is **GRANTED**. The clerk is directed (1) to enter a judgment for the defendants and against Kollman, (2) to terminate any pending motion, and (3) to close the case

ORDERED in Tampa, Florida, on September 8, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE